**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OLYMPIA SPORTS ACQUISITIONS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10853 (MFW)<br><br>(Jointly Administered)<br><br>Obj. Deadline: February 15, 2023 at 4:00 p.m. (ET)<br>Hearing Date: February 22, 2023 at 11:30 a.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING PRIVATE SALE
OF THE RUNNING SPECIALTY GROUP, LLC'S MEMBERSHIP UNITS
IN ROGUE RUNNING TRAINING, LLC FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

The above-captioned debtors and debtors in possession (the "Debtors") file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the private sale (the "Proposed Sale") of all of The Running Specialty Group, LLC's ("RSG") membership units (the "Membership Units") in Rogue Running Training, LLC ("Rogue Training") to Rogue Equipment, LLC ("Rogue Equipment") free and clear of liens, claims, encumbrances, and interests pursuant to §§ 105(a) and 363(f) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are (1) Olympia Sports Acquisitions, LLC, a Delaware limited liability company (1451); (2) RSG Acquisitions, LLC, a Delaware limited liability company (1599); (3) Project Running Specialties, Inc., a Delaware corporation (6001); (4) Project Sage Acquisition, LLC, a Delaware limited liability company (7727); (5) Legacy Shoes, Inc., a Delaware corporation (1185); (6) Clever Training Operating Co., LLC, a Delaware limited liability company (9177); (7) The Running Specialty Group LLC, an Indiana limited liability company (5378); (8) The Running Specialty Group Acquisitions 1, LLC, an Indiana limited liability company (5505); (9) Heart Monitor Operating, LLC, a Florida limited liability company (6100); (10) Splash Boutique Operating, LLC, a Florida limited liability company (6139); (11) Bargain Fitness Operating, LLC, a Florida limited liability company (8666); (12) Digital Business Operating, LLC, a Florida limited liability company (9802); and (13) FSSS Operating, LLC, a Florida limited liability company (8585). The location of the Debtors' corporate headquarters is 9 N. River Road, PMB 650, Auburn, ME 04210.

1

14028283/1

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N), and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are §§ 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 6004-1.

## BACKGROUND

**A. General Background.**

4. On September 11, 2022 (the "Petition Date"), the Debtors filed their respective voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possessions as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in these Chapter 11 Cases. On September 23, 2022, an Official Committee of Unsecured Creditors (the "Committee") was appointed.

6. A full description of the Debtors' business operations, corporate structure, capital structure, and reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Mark Coffey in Support of First Day Motions* [D.I. No. 12] and the *Declaration of Adam Meislik in Support of First Day Motions* [D.I. No. 13] (collectively, the "First Day Declarations") which are both fully incorporated herein.

7. Following extensive analysis, the Debtors, in consultation with their advisors, made the difficult decision to close and wind down or conduct other similar themed sales ("Store Closing Sales") for the Debtors' brick-and-mortar stores remaining in operation on the Petition Date.

8. Accordingly, on the Petition Date, the Debtors filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [D.I. 9], which was approved on a final basis on October 6, 2022 [D.I. 143].

9. As of September 30, 2022, all of the Debtors' stores had been liquidated and shut down.

10. The Debtors are in the process of liquidating all of their remaining assets. Pursuant to the Court's *Order: (A) Approving Bidding Procedures in Connection with a Sale of the Debtors' Intangible Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; (B) Scheduling and Auction and Sale Hearing; (C) Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* [D.I. 347], the Debtor is currently marketing for sale all of its intellectual property and other intangible assets (the "Intangible Assets"), which do not include the Membership Units.

B. **The Formation and Operation of Rogue Running Training, LLC.**

11.     In February 2017, Project Running Specialties, Inc. ("Project Running") acquired The Running Specialty Group Acquisitions, LLC ("RSG Acquisitions") and its subsidiary RSG, which in turn owned The Running Specialty Group Acquisitions 1, LLC d/b/a Jackrabbit ("Jackrabbit"). At the time of the acquisition, Jackrabbit was a running specialty retailer with approximately fifty-five brick-and-mortar stores and a significant ecommerce presence that targeted runners interested in high-end products.

12.     Rogue Equipment is a running training and coaching platform based in Austin, Texas. Rogue Equipment formerly owned and operated a retail store in Austin, but in September 2017, Rogue Equipment sold its retail operations to Jackrabbit.

13.     Following this sale, Rogue Equipment and Jackrabbit decided to create a new entity that would utilize Jackrabbit's retail space and Rogue Equipment's coaching expertise to provide in-store, run-specific coaching services to customers. To that end, in April 2018, they formed Rogue Training in Texas, with RSG holding 8,000 membership units (an 80% interest) and Rogue Equipment holding the remaining 2,000 membership units (a 20% interest), in the LLC. Pursuant to Section 8.1 of Rogue Training's Limited Liability Company Agreement (the "LLC Agreement"), a copy of which is attached hereto as **Exhibit B**, RSG and Rogue Equipment may not transfer their membership units to an unaffiliated third party without the other's consent. **Exhibit B** at 16.

14.     The LLC Agreement designates Rogue Equipment as the manager of Rogue Training. *Id.* at 13. As manager, Rogue Equipment has full and exclusive authority to manage, control, administer, and operate the business and affairs of Rogue Training, and to make all decisions or to act for or bind Rogue Training. *Id.* at 12-13. For its services as manager, the LLC

Agreement provides that Rogue Equipment is entitled to yearly compensation equal to the greater of (a) $75,000 or (b) 10% of revenues, not to exceed $300,000 (the "Management Fee"). *Id*. at 13.

15. In addition to its managerial services, Rogue Equipment also provided all of Rogue Training's training and coaching expertise, including: (i) an agenda, curriculum, and related materials for a coaching school; (ii) training periodization and planning methodology; (iii) training schedules, including day-by-day schedules and workout details and descriptions; (iv) supplemental training routines, including stretching, form drills, foot drills, and core-strength routines; and (v) supplemental training materials including "tip of the week" details to go along with Rogue Training's training schedules. *Id*. at 27.

16. From the inception of Rogue Training until November 2021, RSG and/or Jackrabbit maintained Rogue Training's accounts and finances. In November 2021, for a number of reasons, Rogue Equipment took over maintenance and management of Rogue Training's finances. Shortly thereafter, the Debtors opted to sell Jackrabbit's assets to Fleet Feet Sports, LLC ("Fleet Feet"). This sale included Jackrabbit's retail locations but did not include RSG's Membership Units in Rogue Training, which, other than its office lease and its interest in Jackrabbit, is RSG's only remaining asset. *See* [D.I. 195] at 11, 15. The sale to Fleet Feet was consummated in December 2021. Following the sale of Jackrabbit's assets to Fleet Feet, Rogue Equipment continued to operate Rogue Training and manage Rogue Training's finances.

17. Rogue Training has never operated at a profit or made a distribution to its members. For the time period beginning in November 2021, when Rogue Equipment took over management of Rogue Training's finances, through November 30, 2022, Rogue Training operated at a net loss. As a result, Rogue Training has been unable to pay the majority of Rogue Equipment's Management Fee, which continues to accrue.

**C. The Proposed Sale.**

18.     After the Petition Date, Rogue Equipment approached counsel for the Debtors to inquire about the potential purchase of RSG's Membership Units in Rogue Training. Upon learning that RSG's Membership Units would not be included among the Intangible Assets being auctioned pursuant to the bidding procedures approved by the Court, Rogue Equipment proposed to purchase the Membership Units by private sale.

19.     After engaging in good-faith, arm's-length negotiations, Rogue Equipment has agreed to purchase RSG's Membership Units in Rogue Training for the amount of $15,000.00. To that end, the Debtors and Rogue Equipment have executed the unit purchase agreement attached hereto as **Exhibit C** (the "Purchase Agreement"), which will not become effective unless and until this Court grants the Motion and approves the Proposed Sale. In accordance with Local Rule 6004-1, the material terms of the Purchase Agreement are as follows:

| **Seller/Debtor** | The Running Specialty Group, LLC |
|---|---|
| **Purchaser** | Rogue Equipment, LLC |
| **Purchased Assets** | The Running Specialty Group, LLC's 8,000 Membership Units in Rogue Running Training, LLC |
| **Purchase Price** | $15,000.00 |
| **Sale to Insider** (Local Rule 6004-1(b)(iv)(A)) | The Purchaser, Rogue Equipment, LLC, is a co-member, along with The Running Specialty Group, LLC, in Rogue Running Training, LLC. As such, Rogue Equipment may fall within the term "insider" as set forth in § 101(31) of the Bankruptcy Code.<br><br>The Debtors took the following measures to ensure the fairness of the sale process and the Proposed Sale:<br>i. The Debtors and Rogue Equipment were each represented by independent counsel;<br>ii. The Proposed Sale is the product of good-faith, arm's-length negotiations; and<br>iii. The Debtors sought and received the approval of the Committee to the Proposed Sale prior to the filing of this Motion. |

| | |
|---|---|
| **Agreements with Management** (Local Rule 6004-1(b)(iv)(B)) | The Purchaser has not discussed or entered into any agreements with management or key employees regarding compensation or future employment. |
| **Releases** (Local Rule 6004-1(b)(iv)(C)) | The Proposed Sale does not involve any releases, waivers, or other satisfaction of claims against any entity. |
| **Private Sale** (Local Rule 6004-1(b)(iv)(D)) | The Proposed Sale is a private sale resulting from good-faith, arm's-length negotiations. No auction or additional marketing or competitive bidding are contemplated in connection with the Proposed Sale. |
| **Closing and Other Deadlines** (Local Rule 6004-1(b)(iv)(E)) | **Sale Hearing**: A Sale Hearing is proposed to take place during the Omnibus Hearing scheduled for February 22, 2023, at 11:30 a.m. prevailing Eastern Time.<br><br>**Closing Date**: Within three (3) business days after the date on which the Court has entered the Order granting this Motion and such order has become final and nonappealable.<br><br>**Condition to Closing**: The Bankruptcy Court shall have entered the Order approving the Purchase Agreement and Proposed Sale free and clear of any liens, claims, encumbrances, and other interests under § 363(f) of the Bankruptcy Code. |
| **Good Faith Deposit** (Local Rule 6004-1(b)(iv)(F)) | The Purchaser has not submitted, nor will it be required to submit, a good faith deposit. |
| **Interim Arrangements with Proposed Buyer** (Local Rule 6004-1(b)(iv)(G)) | The Debtors are not entering into any interim agreements or arrangements with the Purchaser. |
| **Use of Proceeds** (Local Rule 6004-1(b)(iv)(H)) | The Debtors do not propose to release sale proceeds on or after the closing without further Court order, or to provide for a definitive allocation of sale proceeds between or among various sellers or collateral. |
| **Tax Exemption** (Local Rule 6004-1(b)(iv)(I)) | The Proposed Sale will not be declared exempt from taxes under § 1146(a) of the Bankruptcy Code. |
| **Record Retention** (Local Rule 6004-1(b)(iv)(J)) | Not applicable. |
| **Sale of Avoidance Actions** (Local Rule 6004-1(b)(iv)(K)) | The Debtors do not seek, via the Proposed Sale, to sell or otherwise limit their rights to pursue avoidance claims under chapter 5 of the Bankruptcy Code. |
| **Requested Findings as to Successor Liability** (Local Rule 6004-1(b)(iv)(L)) | The Proposed Sale is proposed to be free and clear of all claims, liens, restrictions, security interests, or other encumbrances of any kind, with no successor liability resulting from the Proposed Sale, other than any restrictions imposed by (i) applicable federal and state securities laws, and (ii) the LLC Agreement. |

| | |
|---|---|
| **Sale Free and Clear of Unexpired Leases** (Local Rule 6004-1(b)(iv)(M)) | Not applicable. |
| **Credit Bid** (Local Rule 6004-1(b)(iv)(N)) | Not applicable. |
| **Relief from Bankruptcy Rule 6004(h)** (Local Rule 6004-1(b)(iv)(O)) | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h). |

## RELIEF REQUESTED

20. By this Motion, the Debtors seek entry of an order: (i) approving the sale of RSG's Membership Units in Rogue Training to Rogue Equipment free and clear of all liens, claims, encumbrances, and interests pursuant to the Purchase Agreement and § 363(f) of the Bankruptcy Code; and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

**A. The Proposed Sale is Authorized by § 363 as a Sound Exercise of the Debtors' Business Judgment and is in the Best Interest of the Debtors, Their Estates, and Creditors.**

21. In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be conducted by private sale or public auction. In this case, the Debtors have determined that a private sale of RSG's Membership Units in Rogue Training will enable them to maximize value by obtaining valuable consideration for the asset while minimizing the cost of marketing on an asset that, in the Debtors' business judgment, is unlikely to bring in a higher or otherwise better offer—particularly in light of Rogue Training's poor financial performance and the transfer restrictions in the LLC Agreement. The Debtors thus believe the Proposed Sale is in the best interests of their stakeholders.

22. A sale of the debtor's assets should be authorized pursuant to § 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("Under Section 363, the debtor-in-

8

possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 174 (Bankr. D. Del. 1991).  Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (i) whether a sound business justification exists for the sale, (ii) whether adequate and reasonable notice of the sale was given to interested parties, (iii) whether the sale will produce a fair and reasonable price for the property, and (iv) whether the parties have acted in good faith. *See Del.& Hudson*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987). A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estates, creditors, or interest holders. *See, e.g., In re Abbotts Dairies of Pa, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

23.     There is a presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Res.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) ("The business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.") (citations omitted); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 Bankr. LEXIS 2000, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate.") (citations omitted).

24. Section 363 of the Bankruptcy Code provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). In considering a proposed sale, courts look at whether the sale is in the best interests of the estate based on the facts and the history of the case. *In re Am. West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) *(citing Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)). This requires an examination of the "business justification" for the proposed sale. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (B.A.P. 9th Cir. 1996); *In re Wilde Horse Enters., Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Ctr., Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997). The trustee or debtor-in-possession has "broad power" under section 363 to sell property of an estate, and "the manner of sale is within the discretion of the trustee …." *In re The Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985); *see also Meyers v. Martin (In re Martin)*, 91 F.3d 289, 295 (3d Cir. 1996); *In re Abbotts Dairies of Pa., Inc.*, 788 P.2d 143 (2d Cir. 1986); *Official Comm. of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992).

25. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *Four B. Corp. v. Food Barn Stores (In re Food Barn Stores)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Res.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). As

14028283/1

long as the sale appears to enhance a debtor's estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference."); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998).

26. The Debtors elected not to include the Membership Units among the Intangible Assets and thus not subject the Membership Units to the marketing, sale, and auction process set forth in the Bidding Procedures. This decision was made, in part, due to a provision in the LLC Agreement that appears to limit RSG's ability to sell the Membership Units to a third party without Rogue Equipment's consent. This provision could significantly cool the market for prospective bidders or purchasers for the Membership Units and diminish its fair market value. That Rogue Training has consistently operated at a net loss and owes Rogue Equipment a considerable amount in unpaid Management Fees are further factors that limit the value that the Debtors can obtain from the sale of the Membership Units to a third party.

27. The Proposed Sale to Rogue Equipment allows the Debtors to receive valuable consideration while avoiding the time and expense of the marketing, bidding, and auction process. The Proposed Sale also avoids a potentially timely and costly dispute as to Rogue Equipment's right under the LLC Agreement to withhold consent to a transfer of RSG's Membership Units.

28.     The Debtors have received no offers for the purchase of the Membership Units other than the offer from Rogue Equipment. For this reason and the reasons stated in the preceding paragraphs, the Debtors believe that the purchase price of $15,000.00 is fair and reasonable for an asset that otherwise would likely bring no value to the Debtors' estates.

29.     Accordingly, the Debtors believe that the sale of the Membership Units to Rogue Equipment pursuant to the Purchase Agreement should be approved.

**B. The Sale(s) of the Intangible Assets Free and Clear of Liens, Claims and Other Interests is Authorized by Section 363(f).**

30.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This equitable power may be utilized to effectuate the provisions of section 363(f). *See, e.g., In re Trans World Airlines, Inc.*, Case No. 01-0056 (PJW), 2001 Bankr. LEXIS 723, 2001 WL 1820325, at *9, 18-19 (Bankr. D. Del. Mar. 27, 2001) (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

31. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Membership Units "free and clear" of liens and interests. *See, e.g., In re Dura Auto. Sys., Inc.*, 2007 WL 7728109 n.32 (Bankr. D. Del. Aug. 15, 2007); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (section 363(f) of the Bankruptcy Code is written in the disjunctive, thus a court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met); *In re Bygaph, Inc*., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).

32. In this case, the Debtors are not aware of any other liens, claims, or interests in the Membership Units. As of the Petition Date, White Oak Global Advisors ("White Oak") held a security interest in substantially all of the Debtors' assets, including RSG's Membership Units in Rogue Training. However, the debt to White Oak has been paid in full, and White Oak's lien on the Debtors' assets, including the Membership Units, has been released. Nevertheless, in an abundance of caution and to ensure that Rogue Equipment obtains clear title, the Debtors request that the Order provide that the Proposed Sale is free and clear of all liens, claims, encumbrances and all other interests, including rights or claims based on any taxes or successor or transferee liability.

33. The Debtors submit that it is also appropriate to sell the Membership Units free and clear of successor liability relating to the Debtors' businesses. Such a provision ensures that Rogue Equipment is protected from any claims or lawsuits premised on the theory that the Rogue

Equipment is a successor in interest to the Debtors. Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability relating to the debtor's business. *See e.g., In re Trans World Airlines, Inc*., 322 F.3d 283, 288–89 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Gen. Motors Corp.,* 407 B.R. 463, 505-06 (Bankr. S.D.N.Y. 2009) (holding that "the Court will permit GM's assets to pass to the purchaser free and clear of successor liability claims, and in that connection, will issue the requested findings and associated injunction."); *In re Chrysler LLC,* 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) *("in personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction."); *see also, WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistant Servs*., 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) (approving sale of debtor's assets under section 363(f) and precluding governmental entity from collecting depreciation recapture arising from such sale from the purchaser); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986) (sale pursuant to section 363(f) barred successor liability for product defect claims), *aff'd,* 805 F.2d 1515 (11th Cir. 1986); *Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.)*, 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982) (sale pursuant to section 363(f) was free and clear of successor liability claims for employment discrimination and civil rights violations); *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258 (3d Cir. 2000) (citing *Leckie* for the proposition that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute.")

34. The purpose of an order purporting to authorize the transfer of assets free and clear of all liens, claims, encumbrances and all other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. To that end, Rogue Equipment should not be liable under any theory of successor liability relating to the Debtors' businesses, but should hold the Membership Units free and clear.

### C. Adequate and Reasonable Notice of the Sale Will Be Provided

35. The Debtors will provide adequate notice of this Motion to parties in interest, as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

### D. Rogue Equipment Should be Afforded All Protections Under Section 363(m) as a Good Faith Purchaser.

36. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

37. Section 363(m) "reflects the salutary 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir.

15

1986) (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

38. Rogue Equipment has made an arms-length, good faith offer to which the Debtors have agreed in accordance with their reasonable, informed business judgment. Therefore, the Debtors request a finding that Rogue Equipment is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**E. Relief from the Fourteen-Day Waiting Period Under Bankruptcy Rules 6004(h) is Appropriate.**

39. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To preserve the value of the Membership Units and limit the costs of administering and preserving such assets, the Debtors seek to close the Sale as soon as possible after all closing conditions have been achieved or waived.

40. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## NOTICE

41.     The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) the United States Attorney's Office for the District of Delaware; and (d) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: February 1, 2023    **MORRIS JAMES LLP**

*/s/ Brya M. Keilson*
Jeffrey R. Waxman (DE Bar No. 4152)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue; Suite 1500
Wilmington, DE  19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:  jwaxman@morrisjames.com
E-mail:  bkeilson@morrisjames.com

and

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (admitted *pro hac vice*)
Melissa Davis Lowe (admitted *pro hac vice*)
Max Casal (admitted *pro hac vice*)
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com
E-mail:  mcasal@shulmanbastian.com

*Counsel to the Debtors and Debtors in Possession*