**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OLYMPIA SPORTS ACQUISITIONS, LLC, *et al.,* | Case No. 22-10853 (MFW) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. ___** |

**ORDER APPROVING PRIVATE SALE OF THE RUNNING SPECIALTY**
**GROUP, LLC'S MEMBERSHIP UNITS IN ROGUE RUNNING TRAINING, LLC**
**FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

Upon consideration of the motion (the "<u>Motion</u>")[2] filed by the above-captioned debtors

and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order, pursuant to §§ 105(a)

and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 6004 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "<u>Local Rules</u>"), approving the private sale (the "Proposed <u>Sale</u>") of The Running

Specialty Group, LLC's ("<u>RSG</u>") membership units (the "<u>Membership Units</u>") in Rogue Running

Training, LLC ("<u>Rogue Training</u>") to Rogue Equipment, LLC ("<u>Rogue Equipment</u>") free and clear

of all liens, claims, encumbrances, and interests, and (ii) granting related relief; and this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are (1) Olympia Sports Acquisitions, LLC, a Delaware limited liability company (1451); (2) RSG Acquisitions, LLC, a Delaware limited liability company (1599); (3) Project Running Specialties, Inc., a Delaware corporation (6001); (4) Project Sage Acquisition, LLC, a Delaware limited liability company (7727); (5) Legacy Shoes, Inc., a Delaware corporation (1185); (6) Clever Training Operating Co., LLC, a Delaware limited liability company (9177); (7) The Running Specialty Group LLC, an Indiana limited liability company (5378); (8) The Running Specialty Group Acquisitions 1, LLC, an Indiana limited liability company (5505); (9) Heart Monitor Operating, LLC, a Florida limited liability company (6100); (10) Splash Boutique Operating, LLC, a Florida limited liability company (6139); (11) Bargain Fitness Operating, LLC, a Florida limited liability company (8666); (12) Digital Business Operating, LLC, a Florida limited liability company (9802); and (13) FSSS Operating, LLC, a Florida limited liability company (8585).  The location of the Debtors' corporate headquarters is 9 N. River Road, PMB 650, Auburn, ME 04210.

[2] Capitalized terms not otherwise defined herein shall have the meanings provided to them in the Motion.

having determined that the relief set forth in this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the entire record in these Chapter 11 Cases; and after due deliberation thereon, and good and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.    <u>Findings of Fact and Conclusions of Law</u>. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any findings of fact herein constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction and Venue</u>. The Court has jurisdiction over the Motion and the property of the Debtors' estates, including, without limitation, the Membership Units, to be sold, transferred, or conveyed pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. § 1408 and 1409.

C.    <u>Basis for Relief</u>. The statutory bases for the relief requested in the Motion are (i) §§ 105 and 363 of the Bankruptcy Code, (ii) Bankruptcy Rule 6004, and (iii) Local Rule 6004-1.

D.    <u>Final Order</u>. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

E.    <u>Exercise of Business Judgment</u>. The Debtors have demonstrated a sufficient basis and compelling circumstances to sell the Membership Units prior to confirmation of a chapter 11 plan under section 1129 of the Bankruptcy Code, and such actions are appropriate exercises of

their reasonable business judgment and in the best interests of the Debtors, their estates, and their creditors.

F.   <u>Best Interests of the Debtors</u>. The relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors.

G.   <u>Good Faith</u>. The Proposed Sale is the product of arms' length negotiations conducted in good faith.

**IT IS HEREBY ORDERED THAT:**

1.   The Motion is GRANTED.

2.   The Purchase Agreement attached hereto as **Exhibit 1** is hereby approved in its entirety and is incorporated herein by reference.

3.   The Debtors, as well as their officers, employees, and agents, shall be, and hereby are, authorized to take any and all actions necessary or appropriate to implement the relief granted in this Order and to consummate the Proposed Sale, including but not limited to execution of the Unit Transfer Power attached as Exhibit A to the Purchase Agreement.

4.   Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Membership Units shall be free and clear of all liens, claims, encumbrances, and all other interests affecting title to the Membership Units, including rights or claims based on any taxes or successor or transferee liability, with any such liens, claims, encumbrances, and other interests attaching to sale proceeds with the same validity, extent, and priority as immediately prior to the sale.

5.   Rogue Equipment shall be, and is hereby, afforded and entitled to all protections of a good faith purchase pursuant to section 363(m) of the Bankruptcy Code, and the sale shall not be subject to avoidance under section 363(n) of the Bankruptcy Code.

14028283/1

6.    The 14-day stay in Bankruptcy Rules 6004(h) is hereby waived, and this Order shall be immediately effective and enforceable upon its entry;

7.    The provisions of this Order shall be binding upon and inure to the benefit of Rogue Equipment, the Debtors, and their respective successors and assigns, including any subsequent trustee or other person appointed as representative of the Debtors' estates. No third parties are intended to be or shall be deemed to be third-party beneficiaries of this Order.

8.    This Court retains jurisdiction with respect to all matters arising from or related to the interpretation and implementation of this Order.

14028283/1

# EXHIBIT 1

## Purchase Agreement

## UNIT PURCHASE AGREEMENT

This Unit Purchase Agreement (this "Agreement") is made and entered into as of the [●] day of February, 2023 (the "Effective Date"), by and between Rogue Equipment, LLC, a Texas limited liability company ("Buyer"), The Running Specialty Group, LLC, an Indiana limited liability company ("Seller"), and Rogue Running Training, LLC, a Delaware limited liability company ("Company"). Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Company Agreement (as defined below). Buyer, Seller and Company are individually referred to herein as a "Party" and collectively as the "Parties".

## W I T N E S S E T H

**WHEREAS**, Buyer and Seller are both Members in the Company;

**WHEREAS**, the Members of the Company are parties to that certain Limited Liability Company Agreement of the Company dated as of April 10, 2018 (the "Company Agreement");

**WHEREAS**, as of the date hereof Seller owns 8,000 Units in the Company, representing eighty percent (80%) of the total outstanding Units of the Company;

**WHEREAS**, as of the date hereof Buyer owns 2,000 Units in the Company, representing twenty percent (20%) of the total outstanding Units of the Company;

**WHEREAS**, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, 8,000 Units in the Company (the "Purchased Units");

**WHEREAS**, Seller is the debtor in the chapter 11 bankruptcy case styled *In re The Specialty Running Group, LLC*, Case No. 22-10859-MFW in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which is being administered by the Bankruptcy Court under the case styled *In re Olympia Sports Acquisitions, LLC, et al.*, Case No. 22-10853-MFW; and

**WHEREAS**, the Parties have submitted this Agreement to the Bankruptcy Court for approval under 11 U.S.C. § 363(f), and the transactions contemplated herein are expressly contingent on obtaining such approval.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.      **Purchase of Purchased Units; Payment of Purchase Price.**

      a.      On the Closing Date, Seller shall sell, transfer, assign and deliver unto Buyer the Purchased Units free and clear of any claims, liens, restrictions, security interests or other encumbrances of any kind, other than any restrictions imposed by (i) applicable federal and state securities laws, and (ii) the Company Agreement, and shall execute and deliver unto Buyer the Unit Power Transfer attached hereto as Exhibit A.

      b.      The purchase price for the Purchased Units shall be Fifteen Thousand Dollars ($15,000.00) (the "Purchase Price"), which shall be paid by Buyer in cash or by wire transfer of immediately available funds to an account or accounts specified in writing by Seller and delivered to Seller on the Closing Date.

2.      **Closing Date.**  The closing of the transactions contemplated by this Agreement (the "Closing") shall take place within 3 business days after (i) the date on which the Bankruptcy Court has

entered an order approving this Agreement and Seller's sale of the Purchased Units to Buyer free and clear of any claims, liens, restrictions, security interests or other encumbrances of any kind under 11 U.S.C. § 363(f) and (ii) such order has become final and nonappealable (such date of Closing, the "Closing Date"). The Closing shall be deemed effective as of 11:59:59 p.m. central time on the Closing Date.  In the event the Bankruptcy Court does not approve this Agreement, this Agreement shall automatically terminate and be of no further force and effect.

3.　　**Representations and Warranties of Buyer**.  Buyer hereby represents and warrants to Seller that each of the following representations and warranties are true as of the date of this Agreement, and unless otherwise expressly set forth herein, as of the Closing Date, with the understanding that Seller is relying on the following representations and warranties in its execution of this Agreement:

a.　　Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of State of Texas.

b.　　Buyer has the full right, power, authority and legal capacity to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly approved by Buyer.  No other actions on the part of Buyer are necessary to approve this Agreement and to consummate the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Buyer, and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with its terms, except that such enforceability (i) may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to the enforcement of creditors' rights generally and (ii) is subject to general principles of equity and the discretion of the court before which any proceedings seeking injunctive relief or specific performance may be brought.

c.　　The execution and performance of this Agreement will not violate any provision of, or result in the breach of, or constitute a default under, or require any consent under, any law, or any order, writ, injunction or decree of any court, governmental agency or arbitration tribunal (except the Bankruptcy Court as provided herein), or any contract, agreement or instrument by which Buyer is bound, except where such violation, breach, default or failure to obtain consent would not have a material adverse effect on Buyer's ability to execute and perform this Agreement.

d.　　Buyer is acquiring the Purchased Units for its own account with the present intention of holding such membership interest for investment purposes and not with a view to or for sale in connection with any public distribution of such securities in violation of any federal or state securities laws.

e.　　The number of Units that constitute the Purchased Units has been negotiated by Buyer and Seller and the Purchase Price constitutes a fair market value of the Purchased Units, after an arms-length negotiation between Buyer and Seller.

f.　　No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

4.　　**Representations and Warranties of Seller**.  Seller hereby represents and warrants to Buyer that each of the following representations and warranties are true as of the date of this Agreement, and unless otherwise expressly set forth herein, as of the Closing Date, with the understanding that Buyer is relying on the following representations and warranties in its execution of this Agreement:

a.　　Seller is a limited liability company, duly organized, validly existing and in good standing under the laws of State of Indiana.

b.　　Subject to approval by the Bankruptcy Court, Seller has the full right, power,

authority and legal capacity to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly approved by Seller.  No other actions on the part of Seller are necessary to approve this Agreement and to consummate the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Seller, and this Agreement constitutes the legal, valid and binding obligations of Seller enforceable against Seller in accordance with its terms, except that such enforceability (i) may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting or relating to the enforcement of creditors' rights generally and (ii) is subject to general principles of equity and the discretion of the court before which any proceedings seeking injunctive relief or specific performance may be brought.

c.      Seller has good and marketable title to the Purchased Units, free and clear of any claims, liens, restrictions, security interests or other encumbrances of any kind, other than any restrictions imposed by (1) applicable federal and state securities laws, and (2) the Company Agreement.

d.      The execution and performance of this Agreement will not violate any provision of, or result in the breach of, or constitute a default under, or require any consent under, any law, or any order, writ, injunction or decree of any court, governmental agency or arbitration tribunal (except the Bankruptcy Court as provided herein), or any contract, agreement or instrument, excluding the Company Agreement, by which Seller is bound, except where such violation, breach, default or failure to obtain consent would not have a material adverse effect on Seller's ability to execute and perform this Agreement.

e.      The number of Units that constitute the Purchased Units has been negotiated by Buyer and Seller and the Purchase Price constitutes a fair market value of the Purchased Units, after an arms-length negotiation between Buyer and Seller.

f.      No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

5.      **Termination**.  This Agreement may be terminated at any time prior to the Closing Date as follows:

a.      Automatically, if the Bankruptcy Court or a higher court (i) enters an order denying approval of this Agreement and Seller's sale of the Purchased Units to Buyer free and clear of any claims, liens, restrictions, security interests or other encumbrances of any kind under 11 U.S.C. § 363(f) and (ii) such order has become final and nonappealable;

b.      by mutual written consent of Seller and Buyer;

c.      by Buyer if Seller has breached any of its representations, warranties, covenants or agreements and has not cured such breach prior to the earlier of (A) 5 days following written notice of the breach and (B) the Closing Date, so long as Buyer is not in default of its obligations hereunder;  or

d.      by Seller if Buyer has breached any of its representations, warranties, covenants or agreements and has not cured such breach prior to the earlier of (A) 5 days following written notice of the breach and (B) the Closing Date, so long as Seller is not in default of its obligations hereunder.

In the event of the termination of this Agreement, no Party will have any liability of any nature whatsoever to the other under this Agreement, including liability for damages, unless such Party is in default of its obligations under this Agreement, in which event the Party in default will be liable to the other Party for such default.

**6.** **Complete Agreement**.  This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof.  All prior negotiations and understandings are merged herein.  This Agreement may not be modified unless agreed to in writing and signed by all Parties hereto.

**7.** **Applicable Law**.  This Agreement shall be construed and enforced according to the laws of the State of Delaware without regard to its conflict of laws rules.

**8.** **No Presumption Created**.  The Parties acknowledge that they have independently negotiated the provisions of this Agreement, that they have relied upon their own counsel as to matters of law and application and that no Party has relied upon any other Party with regard to such matters.  The Parties expressly agree that there shall be no presumption created as a result of any Party having prepared in whole or in part any provision of this Agreement.

**9.** **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together comprise one and the same instrument.

**10.** **Section Captions**.  Section and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

**11.** **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

**12.** **Expenses**.  All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such costs and expenses.  In the event that any suit or action is instituted under or in relation to this Agreement, including to enforce any provision in this Agreement, the prevailing Party in such dispute shall be entitled to recover from the losing Party all fees, costs and expenses of enforcing any right of such prevailing Party under or with respect to this Agreement, including such reasonable fees and expenses of attorneys and accountants.

**13.** **Notices**.  All notices, consents, requests, demands and other communications that are required or may be given pursuant to the terms of this Agreement shall be in writing and shall be deemed duly given or delivered (a) when received if delivered by hand, (b) the business day after their deposit with a recognized overnight commercial courier (receipt requested), or (c) upon receipt if sent by email (with receipt confirmed), provided that with respect to clause (c) a copy is either promptly thereafter mailed in the United States by first-class postage pre-paid mail or sent by a recognized overnight commercial courier (receipt requested), to the Party as follows:

(a)    if to Buyer:

        Rogue Equipment, LLC
        410 Pressler Street
        Austin, Texas  78703
        Attention:  Chris McClung
        chris@roguerunning.com

(b)    if to Seller:

        The Running Specialty Group, LLC
        c/o Shulman Bastian Friedman & Bui LLP
        Attn: Alan Friedman and Melissa Lowe
        100 Spectrum Center Drive, Suite 600
        Irvine, CA 92618
        afriedman@shulmanbastian.com
        mlowe@shulmanbastian.com

or to such other mailing or email address as any Party shall have designated in writing to the other Party by sending notice pursuant to this <u>Section 13</u>.

**14.** <u>**Future Actions; Delivery of Business Records**</u>. Each of the Parties shall execute and deliver all such future instruments and take such other and further action as may be reasonably necessary or appropriate to carry out the provisions of this Agreement and the intention of the Parties expressed herein. In case at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each Party shall take all such necessary action as may be reasonably requested by any of the other Party or the Company.  To the extent that Seller has possession, custody, or control of any information, books, and records related to the operations and finances of the Company prior to the Closing, Seller shall promptly provide such information, books, and records to Buyer within five (5) business days prior to the Closing.  To the extent that Seller subsequently discovers or locates any information, books, and records related to the operations and finances of the Company prior to the Closing, Seller shall promptly provide such information, books, and records to Buyer within five (5) business days of discovering any such information, books and records.

**15.** <u>**Survival of Representations and Warranties**</u>.  The representations, warranties and covenants of each Party contained in this Agreement shall survive the execution and delivery of this Agreement and the Unit Power Transfer, and shall in no way be affected by any investigation of the subject matter thereof made by or on behalf of either Party.

*[signature page to follow]*

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**BUYER:**

**ROGUE EQUIPMENT, LLC**

_____

Name:_____

Title:_____

**SELLER:**

**THE RUNNING SPECIALTY GROUP, LLC**

_____

Name:_____

Title:_____

**COMPANY ACKNOWLEDGEMENT AND CONSENT:**

The undersigned acknowledges the terms and conditions of this Agreement and hereby joins in this Agreement for the purposes of consenting to the transfer of the Purchased Units from Seller to Buyer.

**ROGUE RUNNING TRAINING, LLC**

_____

Name: _____

Title: _____

**EXHIBIT A**

Unit Transfer Power

(see attached)

## UNIT TRANSFER POWER

**FOR VALUE RECEIVED,** The Running Specialty Group, LLC, an Indiana limited liability company ("<u>Seller</u>") does hereby sell, transfer, assign, convey and deliver unto Rogue Equipment, LLC, a Texas limited liability company ("<u>Buyer</u>"), **8,000 Units** of Rogue Running Training, LLC, a Delaware limited liability company (the "<u>Company</u>"), standing in the name of Seller on the books of the Company, and hereby appoints the Secretary of the Company as the undersigned's duly authorized agent and attorney-in-fact to transfer such membership interests on the books of the Company with full power of substitution in the premises.

Dated: February _____, 2023

SELLER:

**THE RUNNING SPECIALTY GROUP, LLC**

_____

Name:_____
Title:_____