IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>OLYMPIA SPORTS ACQUISITIONS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10853 (MFW)<br><br>(Jointly Administered) |

**DECLARATION OF RICHELLE KALNIT IN SUPPORT OF MOTION FOR ORDER: (A) AUTHORIZING SALE OF DEBTORS' INTANGIBLE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (B) GRANTING RELATED RELIEF**

I, Richelle Kalnit, declare as follows:

1. Except as otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I am submitting this declaration to advise the Court and all interested parties as to the outcome of the auction for the Debtors' intellectual property and other intangible assets ("Intangible Assets") and in support of the *Motion for Order: (A) Authorizing Sale of Debtors' Intangible Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (B) Granting Related Relief* ("Sale Motion").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are (1) Olympia Sports Acquisitions, LLC, a Delaware limited liability company (1451); (2) RSG Acquisitions, LLC, a Delaware limited liability company (1599); (3) Project Running Specialties, Inc., a Delaware corporation (6001); (4) Project Sage Acquisition, LLC, a Delaware limited liability company (7727); (5) Legacy Shoes, Inc., a Delaware corporation (1185); (6) Clever Training Operating Co., LLC, a Delaware limited liability company (9177); (7) The Running Specialty Group LLC, an Indiana limited liability company (5378); (8) The Running Specialty Group Acquisitions 1, LLC, an Indiana limited liability company (5505); (9) Heart Monitor Operating, LLC, a Florida limited liability company (6100); (10) Splash Boutique Operating, LLC, a Florida limited liability company (6139); (11) Bargain Fitness Operating, LLC, a Florida limited liability company (8666); (12) Digital Business Operating, LLC, a Florida limited liability company (9802); and (13) FSSS Operating, LLC, a Florida limited liability company (8585). The location of the Debtors' corporate headquarters is 9 N. River Road, PMB 650, Auburn, ME 04210.

3. I am a Senior Vice President with Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank"), with offices located at 1500 Broadway, 26th Floor, New York, NY 10036. I am one of the representatives of Hilco Streambank primarily involved in the sale of the Debtors' Intangible Assets.

4. Hilco Streambank was engaged by the Debtors to market and sell the Intangible Assets. Hilco Streambank, with the assistance and oversight of the Debtors' management and advisors, has been actively engaged in the process of marketing the Intangible Assets for sale.

5. Hilco Streambank officially launched the marketing process for the sale of the Intangible Assets on December 16, 2022 by initiating an email blast to Hilco Streambank's database of contacts, which linked to a landing page on Hilco Streambank's website, and conducting direct outreach to potential buyers on a curated list created by Hilco Streambank. Hilco Streambank maintained a data room for all interested parties to complete their due diligence on the Intangible Assets, subject to signing a confidentiality agreement.

6. On January 12, 2023, the Court entered the *Order (A) Approving Bidding Procedures and Protections in Connection with Certain of the Debtors' Intangible Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Scheduling an Auction and Sale Hearing; (C) Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* [D.I. 390] (the "Bid Procedures Order"), which approved, among other things, certain bidding procedures (the "Bidding Procedures")[2] in connection with the sale of the Intangible Assets.

---

[2] All capitalized terms not otherwise defined herein shall have the meaning set forth in the Bidding Procedures.

7. Throughout the marketing process, Hilco Streambank continued to reach out to potential buyers, deployed a press release, conducted a social media marketing campaign and facilitated diligence with interested parties.

8. By the time of the Auction, Hilco Streambank received seven (7) qualified bids for all or portions of the Intangible Assets, allowed nineteen (19) parties into the data room, and directly reached out to approximately four hundred (400) potential buyers.

9. Pursuant to the Bidding Procedures, on February 9, 2023, the Debtors, through its counsel and Hilco Streambank, conducted the Auction for the sale of the Intangible Assets via Zoom conference/video call. I was present at the Auction via Zoom conference and I conducted the Auction on behalf of the Debtors. A true and correct copy of a draft of the court reporter's transcript from the Auction is attached to the Notice of Successful Bidder filed concurrently herewith.

10. There were five Qualified Bidders at the Auction: (1) Goodsprings INC. ("Goodsprings"); (2) 54 Glen Cove Realty LLC (the "Successful Bidder"); (3) GMA Accessories dba Capelli Sports; (4) ABCJ LLC dba Gloved Commerce; and (5) Scheels All Sports.

11. The Auction was conducted pursuant to the Bidding Procedures and in compliance with the terms set forth in the Bid Procedures Order. The Auction afforded a full, fair, and reasonable opportunity for any party that submitted a timely Qualified Bid to make a higher or otherwise better offer for the Intangible Assets.

12. When the Auction concluded, the Debtors, in consultation with the Consultation Parties, determined that the highest and best value for the Debtors' estates and their creditors was offered by the Successful Bidder. The Successful Bidder's winning bid results in total

14045595.v1

4

consideration of $180,000.00 in cash (the "Successful Bid").  Goodsprings INC is the Backup Bidder with a Backup Bid of $175,000.00.

13. I am not aware of any connection between the Debtors and the Successful Bidder or between the Successful Bidder and any other bidder.  I am not aware of any collusive behavior between the Debtors and any bidder at the Auction.  To the best of my knowledge, the Successful Bidder and the Backup Bidder are not an insider of the Debtors.

14. In my opinion, the Auction in these Cases: (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Intangible Assets; and (b) provided potential purchasers, upon request, sufficient due diligence information to enable them to make an informed judgment on whether to bid on the Intangible Assets and to submit the materials required under the Bid Procedures Order by the Bid Deadline.

15. Based upon the aforementioned, and for the reasons stated in the proposed order, I believe the proposed sale to the Successful Bidder on the terms agreed to at the Auction should be approved and that the Successful Bidder is entitled to a good faith finding under Section 363(m).

Executed in Connecticut.

DATED:  February 10, 2023       ___/s/ *Richelle Kalnit*_____
                                                             Richelle Kalnit